UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| RUSSELL MILLS,<br><br>  Plaintiff,<br><br>v.<br><br>PROFIT DRIVERS LLC,<br>KENNETH STOLL, and<br>JOSEPH SCOTT GREEN,<br><br>  Defendants. | No. 3:25-cv-00203 (MPS) |

**RULING ON MOTION TO DISMISS**

  Plaintiff Russell Mills brings this suit against his former employer, Profit Drivers LLC ("Profit Drivers"), as well as its Chief Operating Officer and Chief Executive Officer, Kenneth Stoll and Joseph Scott Green (collectively with Profit Drivers, "Defendants"). Mills alleges that Defendants failed to compensate him for the work he performed under the terms of his employment agreement, and brings claims of breach of contract, quantum meruit, and unjust enrichment against Profit Drivers, fraudulent inducement against Profit Drivers and Stoll, and violation of the Connecticut Wage Act, under Conn. Gen. Stat. § 31-72, against all Defendants. ECF No. 24 at 4–8. Defendants now move to dismiss the complaint for lack of personal jurisdiction and improper venue under Federal Rules of Civil Procedure 12(b)(2) and 12(b)(3). ECF No. 26 at 1. For the following reasons, I GRANT Defendants' motion to dismiss and transfer this case to the Middle District of Tennessee.

1

## I. Factual Background

### A. Allegations

The facts below are drawn from the complaint and, where relevant, documents incorporated therein or of which the Court may take judicial notice.

Plaintiff Russell Mills is a resident of New Haven County, Connecticut. ECF No. 24 ¶ 5. Profit Drivers is a limited liability company registered in Nashville, Tennessee. *Id.* ¶ 6. Joseph Scott Green is the Chief Executive Officer and sole member of Profit Drivers, and a resident of Davidson County, Tennessee. *Id.* ¶¶ 6, 27. Kenneth Stoll is the Chief Operating Officer of Profit Drivers, and is a resident of Harris County, Texas. *Id.* ¶¶ 7, 26.

On June 24, 2024, Stoll emailed Mills an offer of employment as Interim Chief Financial Officer ("CFO") and Business Development Vice President at Profit Drivers. *Id.* ¶ 11. The terms of the offer included a salary of $200,000 per year paid monthly, commissions for new business, health benefits, access to Profit Driver's 401K plan, 15 days paid vacation annually, and reimbursement for travel to client sites. *Id.* ¶ 12. Per the employment offer, the job was to be "remote." *Id.* ¶ 11.

Mills accepted the employment offer via email on June 25, 2024, and began work on July 15, 2024, *id.* ¶¶ 13–14, performing his duties from his home office in Connecticut, *id.* ¶ 16. He asserts that his duties as CFO involved "setting up a 401K plan for employees, finding better medical coverage for employees, securing short term 'bridge' funding for liquidity" and "soliciting new business on behalf of Profit Drivers." *Id.* ¶¶ 15, 18. To perform these duties, Plaintiff "leveraged" his business contacts "primarily" based in Connecticut, *id.* ¶ 17, and sought business through "discussions" and "in-person meetings" in Connecticut with those contacts. *Id.* ¶¶ 17–18.

Mills sought authority and approval to enter any binding contracts on behalf of Profit Drivers, and "kept [Green and Stoll] apprised of [his] Connecticut-based work." *Id.* ¶ 19.

Despite repeated demands by Mills, the defendants have failed to compensate him for any work performed. *Id.* ¶¶ 20, 23. The length of Mills's employment with Profit Drivers is not alleged, nor is it clear from the pleadings when his employment came to an end.

### B. The Parties' Affidavits

The following facts are relevant for the purposes of this Court's personal jurisdiction and venue determination, and so I draw them from the affidavits submitted by the parties, construing doubts in the plaintiff's favor. *Whitaker v. Am. Telecasting, Inc.*, 261 F.3d 196, 208 (2d Cir. 2001).

Profit Drivers is a limited liability company organized under the laws of Tennessee, with its principal place of business in Nashville, Tennessee. ECF No. 20-2, Green Decl. ¶ 4. In June 2024, Mills was "approached" by Green regarding possible employment at Profit Drivers. ECF No. 27-1, Mills Decl. ¶ 3. At that time, Mills was performing work for another company. *Id.*

Green and Scott assert without dispute that they have not had any physical presence in Connecticut since June 1, 2024. ECF No. 20-2, Green Decl. ¶ 10; ECF No. 20-3, Stoll Decl. ¶ 8. There are no allegations as to their activities in Connecticut prior to or on June 1, 2024, nor as to any physical presence in-state from Stoll or Green whatsoever in relation to their business with Mills.

During their conversation, Green informed Mills that Profit Drivers was a global company, with "reach and resources to serve hundreds of organizations across various industries." ECF No. 27-1, Mills Decl. ¶ 4. Green asserts in his affidavit that Profit Drivers does not derive substantial revenue from interstate or international commerce. ECF No. 20-2, Green Decl. ¶ 6. Mills was then interviewed by Stoll for the Chief Financial Officer position at Profit Drivers. *Id.* ¶ 6. This

interview took place remotely, with Mills located at his home office in Connecticut. *Id.* At all times during the interview process, and upon tendering an employment offer, Defendants were aware that Mills lived in Connecticut and would perform work for the company remotely from Connecticut. *Id.* ¶¶ 5, 9. Stoll asserts that Mills's residence and work-base in Connecticut was not considered in the decision to hire him. ECF No. 20-3, Stoll Decl. ¶ 5.

In the course of performing his work duties, Mills communicated with, held in-person meetings with, and solicited new business from Connecticut-based businesses. *Id.* ¶¶ 13, 15–16. One of those meetings was with a healthcare business located in Shelton, Connecticut, for the purpose of exploring its coverage options. *Id.* ¶ 13. Stoll attended the meeting remotely, but did not ultimately pursue healthcare coverage from this company. *Id.*

Green asserts without dispute that Profit Drivers is not registered to do business in Connecticut, does not conduct or solicit business in Connecticut, and does not receive any revenue from business conducted in Connecticut. ECF No. 20-2, Green Decl. ¶ 5. Mills is the only Connecticut-based employee Profit Drivers has ever had. *Id.* ¶ 7. Neither Green nor Stoll ever directed Mills to conduct business with any Connecticut-based clients as part of his employment with Profit Drivers. *Id.* ¶ 8; ECF No. 20-3, Stoll Decl. ¶ 6. Neither Green nor Stoll have conducted any business in Connecticut unrelated to their roles at Profit Drivers since June 1, 2024. ECF No. 20-2, Green Decl. ¶ 13; ECF No. 20-3, Stoll Decl. ¶ 11.

### C. Procedural History

On February 10, 2025, Mills filed this action against the defendants. ECF No. 1. He has since filed two amended complaints—the first, ECF No. 12, clarifying the citizenship of Profit Drivers and the second, ECF No. 24, following the filing of Defendants' motion to dismiss for improper venue and lack of personal jurisdiction, ECF No. 20. Defendants then refiled a motion

to dismiss on the same grounds, reincorporating the arguments in their original motion by reference and responding to Mills's amended complaint. ECF No. 26. Plaintiff thereafter filed an objection to Defendants' motion to dismiss, ECF No. 27, to which Defendants have filed a reply, ECF No. 31.

## II. Legal Standard

### A. Rule 12(b)(2)

On a motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2), the "plaintiff bears the burden of showing the court has jurisdiction over the defendant," and the "burden is apportioned based on how far the case has progressed." *Corning Inc. v. Shin Etsu Quartz Products Co.*, 242 F.3d 364, at *2 (2d Cir. 2000) (summary order). "The district court has considerable procedural leeway in deciding 12(b)(2) motions, and it may accept affidavits if it so chooses." *Id.* (internal quotation marks omitted). "If the defendant is content to challenge only the sufficiency of the plaintiff's factual allegation … by filing a Rule 12(b)(2) motion, the plaintiff need persuade the court only that its factual allegations constitute a *prima facie* showing of jurisdiction." *Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 85 (2d Cir. 2013).

"A prima facie case requires non-conclusory fact-specific allegations or evidence" establishing the propriety of the Court's personal jurisdiction over the Defendants. *Chirag v. MT Marida Marguerite Schiffahrts*, 604 F. App'x 16, 19 (2d Cir. 2015). "[W]here the issue is addressed on affidavits, all allegations are construed in the light most favorable to the plaintiff and doubts are resolved in the plaintiff's favor." *Whitaker*, 261 F.3d at 208 (citation omitted).

### B. Rule 12(b)(3)

On a motion to dismiss for improper venue under Rule 12(b)(3), a court applies the same standard. *See Gulf Ins. Co. v. Glasbrenner*, 417 F.3d 353, 355 (2d Cir. 2005). The "plaintiff has the

5

burden of showing that venue in the forum district is proper." *MacCallum v. New York Yankees P'ship*, 392 F. Supp. 2d 259, 262 (D. Conn. 2005) (citation omitted). "If the court chooses to rely on pleadings and affidavits, the plaintiff need only make a *prima facie* showing of [venue]." *Gulf Ins. Co.*, 417 F.3d at 355 (citation omitted). "In analyzing whether the plaintiff has made the requisite *prima facie* showing that venue is proper, we view all the facts in a light most favorable to [the] plaintiff." *Phillips v. Audio Active Ltd.*, 494 F.3d 378, 384 (2d Cir. 2007).

### III. Discussion

Defendants first argue that this action should be dismissed under Fed. R. Civ. P. 12(b)(2) because the court lacks personal jurisdiction over Profit Drivers, as well as Green and Stoll in their individual capacities. "In assessing whether personal jurisdiction is authorized, the court must look first to the long-arm statute of the forum state . . . . If the exercise of jurisdiction is appropriate under that statute, the court must decide whether such exercise comports with the requisites of due process." *Whitaker,* 261 F.3d at 208 (quotation marks and citations omitted). I consider each issue below.

#### A. Connecticut's Long-Arm Statute

Connecticut's long-arm statute, Conn. Gen. Stat. § 52–59b, governs personal jurisdiction over both non-resident individuals and foreign LLCs. *See* Conn. Gen. Stat. § 52–59b (enumerating the terms under which a Connecticut court may exercise personal jurisdiction "over any nonresident individual [or] foreign partnership"); *see also Matthews v. SBA, Inc.*, 89 A.3d 938, 960 (Conn. App. Ct. 2014) ("[W]e are convinced that our general long arm jurisdiction statute, § 52–59b, applies to foreign LLCs."). The statute permits courts to exercise jurisdiction, *inter alia*, over any covered entity who,

> in person or through an agent: (1) Transacts any business within the state; … [or]
> (3) commits a tortious act outside the state causing injury to person or property

>  within the state … if such person or agent … (B) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce[.]

Conn. Gen. Stat. § 52-59b(a). Mills argues that this Court's jurisdiction is proper over all defendants under § 52-59b(a)(1) because they have transacted "business" within Connecticut by hiring Mills knowing that he would perform his work duties in Connecticut, and through Mills's pursuit of business opportunities with Connecticut-based businesses on behalf of Profit Drivers. ECF No. 27 at 3–4. Mills also asserts that jurisdiction is proper over Profit Drivers and Stoll under § 52-59b(a)(3)(B) for their out-of-state tortious act of "failing to pay wages due to" Mills. *Id.* at 6. Defendants argue that they have not "transact[ed] any business" under Connecticut law by simply hiring Mills to work remotely within the state and communicating with him during his employment, and that his unilateral transactions with Connecticut-based businesses cannot be attributed to them. ECF No. 20-1 at 9; ECF No. 31 at 3–4. They also argue that jurisdiction under § 52-59b(a)(3)(B) is improper because they assert, and Mills does not contest, that Profit Drivers does not "derive[] substantial revenue from interstate or international commerce."[1] ECF No. 20-1 at 10; ECF No. 31 at 5.

I find that the plaintiff's factual allegations satisfy the requirements of exercising long-arm jurisdiction over all Defendants under § 52-59b(a)(1) and do not address 52-59b(a)(3).

---

[1] Defendants also argue that Green and Stoll are not subject to this Court's personal jurisdiction under the fiduciary shield doctrine, which "exempts a non-resident individual from being subject to local jurisdiction for actions that the non-resident individual took in a corporate representative capacity." *Mystic Days, LLC v. Chhatrala Mystic, LLC*, 2021 WL 619682, at *4 (D. Conn. Feb. 17, 2021). As Defendants acknowledge, the applicability of this doctrine to long-arm jurisdiction has not been established by any binding authority in Connecticut, and its status is disputed on the trial court level. ECF No. 20-1 at 15 n.2; *see Hybrid Athletics, LLC v. Hylete, LLC*, 2019 WL 4143035, at *5 (D. Conn. Aug. 30, 2019) ("The appellate courts in Connecticut have not yet ruled on the viability of [the fiduciary shield] doctrine, and there is a split of authority in the Superior Court."). In New York, whose long-arm statute served as the model for Connecticut's, *Zartolas v. Nisenfeld*, 184 Conn. 471, 474 (1981), the fiduciary shield doctrine has been rejected as a limitation on long-arm jurisdiction, *Kreutter v. McFadden Oil Corp.*, 522 N.E.2d 40, 47 (N.Y. 1988). Because I find that exercising personal jurisdiction over Stoll and Green is improper on other grounds, I do not resolve this issue.

Under Conn. Gen. Stat. § 52-59b(a)(1), non-resident persons and LLCs are subject to a Connecticut court's personal jurisdiction if they, personally or through an agent, "[t]ransact[] any business within the state." Defendants assert that this standard is "not broadly interpreted." ECF No. 20-1 at 7. Mills asserts that this standard is construed "quite broadly." ECF No. 27 at 3. Each cites cases supporting their preferred construction. *Compare Vertrue Inc. v. Meshkin*, 429 F. Supp. 2d 479, 489–90 (D. Conn. 2006) ("The term 'transacting business,' as used in § 52–59b(a)(1), is not broadly interpreted in Connecticut.") (quotation marks and citation omitted); *with Lee v. Golaszewski*, 2023 WL 7497103, at *3 (D. Conn. Nov. 13, 2023) ("The phrase 'transacts any business within the state' is construed quite broadly … [in] Connecticut."). I agree with Mills and do not find the cases cited by the defendants to be persuasive.[2] "[T]he Supreme Court of Connecticut has interpreted the phrase … in § 52–59b(a)(1) quite broadly …. [to] embrace as little as 'a single purposeful business transaction' that gives rise to a cause of action." *Austen v. Catterton Partners V, LP*, 729 F. Supp. 2d 548, 560 (D. Conn. 2010) (quoting *Zartolas*, 184 Conn. at 474). Even so, "[t]here must be some definitive act taken by the defendant that evinces a purposeful availment of the privileges of conducting the subject activity within the forum state and that, subsequently, invokes the benefits and protections of its laws." *Walshon v. Ballon Stoll Bader & Nadler, P.C.*, 996 A.2d 1195, 1199 (Conn. App. Ct. 2010). "Courts are instructed to examine the

---

[2] The confusion in the caselaw stems from Connecticut's long-arm statute governing personal jurisdiction over foreign corporations, Conn. Gen. Stat. § 33-929(e), which extends jurisdiction over any corporation that "transacts business in this state," an arguably narrower formulation than the "transacts *any* business" language in Conn. Gen. Stat § 52-59b(a)(1). *Zartolas v. Nisenfeld*, 184 Conn. 471, 476 n.4 (1981) ("[T]he phrase 'transacts any business' in [sec.] 52-59b has a broader meaning than the phrase[] 'transact[s] business' …."). The phrase "transacts business" in Section 33-929(e) is not broadly construed. *See Milne v. Catuogno Ct. Reporting Servs., Inc.*, 239 F. Supp. 2d 195, 198 (D. Conn. 2002) (discussing § 33-929 and noting that "[t]he term 'transacting business' is not broadly interpreted in Connecticut.") (citation omitted). *Vertrue Inc. v. Meshkin*, the case Defendants cite for their preferred construction of § 52-59b(a)(1), erroneously applies to that statute the construction of § 33-929(e). *See Vertrue*, 429 F. Supp. 2d at 489–90 (citing for authority on the construction of § 52-59b(a)(1) cases that deal either with § 33-929(e) or earlier versions of the statute (*see Milne* and *Chemical Trading v. Manufacture de Produits Chimiques de Tournan*, 870 F. Supp. 21, 23 (D. Conn.1994))).

nature and quality, rather than the amount of Connecticut contacts to determine whether there was purposeful activity." *Lee*, 2023 WL 7497103, at *3.

Defendants aver that their only connection to Connecticut is the plaintiff. Profit Drivers has no other employees in-state, is not registered to do business in Connecticut, and derives no revenue from Connecticut. ECF No. 20-2, Green Decl. ¶ 5, 7. No defendant directed Mills to conduct business in Connecticut or with Connecticut-based companies, and no business ventures were initiated with Connecticut-based companies during Mills's time with Profit Drivers. ECF No. 20-2, Green Decl. ¶ 8. Therefore, the plaintiff asks this Court to exercise personal jurisdiction over the defendants based entirely on their knowledge and approval of Mills's remote work location and Mills's own work during that time. ECF No. 27 at 2–5. After surveying the caselaw, I find that the plaintiff's remote work relationship alone is sufficient to create a prima facie case for jurisdiction under the broad standard of § 52-59b(a)(1).

Many courts have found that the affirmative acts of reaching into a forum state to hire a worker, and conducting ongoing communication related to the employment, are sufficient to satisfy the "transacts any business" standard. *See Kumar v. Opera Sols. OPCO, LLC*, 2021 WL 4442832, at *8 (S.D.N.Y. Sept. 28, 2021) (collecting cases holding that a defendant's knowledge of remote work location and sustained communications amount to purposeful availment of the privilege of conducting business in the forum state under the same language in New York's long arm statute).[3] *See also Williams v. Preeminent Protective Servs., Inc.*, 81 F. Supp. 3d 265, 271

---

[3] Connecticut's long-arm statute was patterned on New York's, and contains the same language at issue here. *Compare* N.Y. C.P.L.R. § 302(a)(1) ("A court may exercise personal jurisdiction over any non-domiciliary … who in person or through an agent … transacts any business within the state[.]") *with* Conn. Gen. Stat. § 52-59b(a)(1) ("[A] court may exercise personal jurisdiction over any nonresident individual … who in person or through an agent … [t]ransacts any business within the state[.]"). *See also Zartolas,* 184 Conn. at 474 ("[I]n enacting § 52–59b, the [Connecticut] legislature used New York Civil Practice Law § 302 ... as a model. We therefore find pertinent the judicial interpretation given to that New York statute.") (citation omitted). This Court therefore examines how New York courts construe the shared language in their long-arm statute for guidance as to the proper construction of Connecticut's version of the statute. *See NovaFund Advisors, LLC v. Capitala Grp., LLC,* 2019 WL 1173019, at *7 & n.4 (D. Conn.

(E.D.N.Y. 2015) (holding that defendant's knowledge of remote work location and sustained communications are "the kind of independent activities in the state that render long-arm jurisdiction appropriate" under New York's long arm statute) (citation and quotation marks omitted); *Manning v. Erhardt + Leimer, Inc.*, 2020 WL 759656, at *8 (W.D.N.Y. Feb. 7, 2020) (long arm statute satisfied where defendants recruited plaintiff "[k]nowing that [he] was unwilling to relocate from his home in New York").

According to Mills's affidavit, Green "approached" Mills regarding employment while Mills was employed by a different company. ECF No. 27-1, Mills Decl. ¶ 3. Mills asserts, and Defendants do not contest, that at all times it was understood that Mills would perform his work duties within Connecticut. ECF No. 27-1, Mills Decl. ¶ 9. Finally, Defendants acknowledge that Green and Stoll "certainly communicated" with Mills during the course of his employment. ECF No. 20-1 at 8.  Thus, Profit Drivers, through its agents Stoll and Green, reached out to Mills within Connecticut to secure his employment, approved an ongoing remote relationship with him based in Connecticut, and kept up communications with him during that employment. These actions are sufficient to find that Profit Drivers, Green, and Stoll transacted purposeful business activity within Connecticut under § 52-59b(a)(1). *See Doe v. McAdam Fin. Grp. LLC*, 2022 WL 3579700, at *5 (S.D.N.Y. Aug. 3, 2022), *report and recommendation adopted*, 2022 WL 3578569 (S.D.N.Y. Aug. 19, 2022) (collecting cases where "personal jurisdiction has been established under [New York's long-arm statute] over out-of-state defendants who supervise or communicate with an employee working remotely from" the forum state).

---

Mar. 13, 2019) (looking to caselaw analyzing N.Y. C.P.L.R. § 302(a)(1) for guidance in construing Conn. Gen. Stat. § 52-59b(a)(1)).

10

Defendants argue that their relationship with Mills does not satisfy long-arm jurisdiction because Mills's work location was incidental to his hiring and because Profit Drivers does not otherwise conduct any Connecticut-based business. ECF No. 20-1 at 9. But it is the "single purposeful" act of reaching into the forum state to hire the worker, and the ongoing employment relationship with the worker located in the forum state, that constitutes the business transaction sufficient to confer personal jurisdiction under § 52-59b(a)(1). *See Manning,* 2020 WL 759656, at *7 ("In the context of an action between an employee and his employer, the plaintiff's employment within the forum state is sufficient to show that the defendant employer transacted business within that state."). Defendants' reliance on *Lee* for the proposition that Defendants' relationship with Connecticut is incidental to Mills's location is not persuasive. In that case, the plaintiff and defendant were engaged in creating a business partnership to be located within New York. *Lee*, 2023 WL 7497103, at *4. It was in the context of that pursuit that the court found the defendants' communications and visits with the plaintiff in Connecticut, which were devoted to creating this New York partnership, were merely incidental. *Id.* ("The record is clear that this partnership, if ever fulfilled, was (or would be) a creature of New York."). Here, by contrast, Defendants created an employment relationship within Connecticut. As it is the employment relationship itself that is the transaction of business at issue, its location is not incidental, but rather forms the basis of the Court's analysis.

For these reasons, I find that the plaintiff's allegations create a prima face case for long-arm jurisdiction over all defendants sufficient to satisfy § 52-59b(a)(1).

## B. Due Process

"If the long-arm statute permits personal jurisdiction, the second step is to analyze whether personal jurisdiction comports with the Due Process Clause of the United States

11

Constitution." *Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 164 (2d Cir. 2010). Defendants argue that even if Connecticut's long-arm statute authorizes personal jurisdiction, due process does not. ECF No. 20-1 at 11. I agree.

"The Due Process Clause of the Fourteenth Amendment constrains a State's authority to bind a nonresident defendant to a judgment of its courts." *Walden v. Fiore*, 571 U.S. 277, 283 (2014). For a court to exercise personal jurisdiction consistent with due process, the defendant must have "certain minimum contacts ... such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Id.* (quoting *International Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945)). "For purposes of this inquiry, a distinction is made between 'specific' jurisdiction and 'general' jurisdiction." *Chloe*, 616 F.3d at 164. "A court's general jurisdiction … is based on the defendant's general business contacts with the forum state." *Id.* Defendants assert, and Mills does not dispute, that they are not subject to this Court's general jurisdiction because no defendant is a resident of Connecticut, and Profit Drivers is not registered to do business in Connecticut and maintains no place of business in Connecticut. ECF No. 20-1 at 12. I agree that Defendants are not subject to this Court's general jurisdiction, and I now consider whether the exercise of specific personal jurisdiction is proper.

"The inquiry whether a forum State may assert specific jurisdiction over a nonresident defendant focuses on the relationship among the defendant, the forum, and the litigation." *Walden*, 571 U.S. at 283–84 (quotation marks and citation omitted). "For a State to exercise jurisdiction consistent with due process, the defendant's suit-related conduct must create a substantial connection with the forum State." *Id.* at 284. Specific jurisdiction is appropriate where a defendant "purposefully avails itself of the privilege of conducting activities within the forum State." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985).

Such activity may include "entering a contractual relationship that envision[s] continuing and wide-reaching contacts in the forum State." *Walden*, 571 U.S. at 285 (quotation marks and citation omitted). "Agency relationships … may be relevant to the existence of specific jurisdiction" where a party "purposefully avail[s] itself of a forum by directing its agents … to take action there." *Daimler AG v. Bauman*, 571 U.S. 117, 135 n.13 (2014). But "the relationship must arise out of contacts that the defendant *himself* creates with the forum State," rather than "contacts between the plaintiff … and the forum State." *Walden*, 571 U.S. at 284 (quotation marks and citation omitted) (emphasis in original). "Such unilateral activity of another party … is not an appropriate consideration when determining whether a defendant has sufficient contacts with a forum State to justify an assertion of jurisdiction." *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 417 (1984). In addition, the plaintiff cannot be the "only link between the defendant and the forum," as it is "the defendant's conduct that must form the necessary connection with the forum State that is the basis for its jurisdiction over him." *Walden*, 571 U.S. at 285. "[The] defendant's relationship with a plaintiff … alone[] is an insufficient basis for jurisdiction." *Id.* at 286.

As discussed above, Mills is the defendants' only connection to Connecticut. Apart from Mills, Profit Drivers has never had another employee within the state, transacts no business within the state, derives no revenue from the state, and has no office in the state. Further, neither Green nor Stoll has been physically present in Connecticut at any time during or following Mills's employment. ECF No. 20-2, Green Decl. ¶ 5, 7, 10; ECF No. 20-3, Stoll Decl. ¶ 8. Mills argues that Defendants' act of hiring him alone indicates that they "availed themselves to being a Connecticut employer" sufficient to satisfy minimum contacts. ECF No. 27 at 8. I disagree.

While Defendants may have entered a contractual relationship with Mills for his employment, the act of hiring a single remote employee alone does not amount to "a contractual relationship that envisioned continuing and wide-reaching contacts in the forum State" sufficient to satisfy due process. *Walden*, 571 U.S. at 285; *see Schlechtweg*, 2022 WL 541507, at *10 (holding that employer's "awareness of [employee's] intention to work remotely from Connecticut [does not] demonstrate[] [an employer's] affirmative intent to create or maintain an ongoing relationship with Connecticut"); *see also Callahan*, 2020 WL 2061882, at *11–12 (finding that "the [defendant's] Connecticut-based contacts as they related to the instant dispute begin and end with [the plaintiff], which cannot be the basis upon which due process is satisfied"); *Waseem v. Stability AI, Inc.*, 2024 WL 5168098, at *6 & n.6 (E.D. Va. Dec. 19, 2024) (collecting cases from every circuit except D.C. holding that "employment of a single remote employee residing in the forum state, without more, does not show that the employer purposefully availed itself to the forum state").

Mills argues that exercising personal jurisdiction over the defendants comports with due process because Defendants "sought out Plaintiff as an employee … while they were aware he was living in Connecticut." ECF No. 27 at 8. Such activity demonstrates the defendants' interest in Mills, but it does not establish any connection or interest by Defendants in the forum state beyond the plaintiff himself. *See Waseem,* 2024 WL 5168098, at *7 ("Plaintiff was given [his position] due to his background and qualifications, rather than his residency and work venues.") (quotation marks omitted). Defendants, by undisputed declaration, did not seek out Plaintiff *because* he was in Connecticut, and had no plan to form any connection to Connecticut *through* the plaintiff by his labor or contacts, nor did they during Plaintiff's time at the company. ECF No. 20-2, Green Decl. ¶ 8; ECF No. 20-3, Stoll Decl. ¶ 6.

While Mills may have leveraged his Connecticut-based contacts and sought out Connecticut-based businesses to solicit new business for Profit Drivers, as well as potential healthcare coverage for the company, he makes no allegation that these efforts were made at the direction of any defendant, nor did they result in any deal between Profit Drivers and a Connecticut-based entity. *See Daimler,* 571 U.S. at 135 n.13 ("[A party] purposefully avail[s] itself of a forum *by directing* its agents … to take action there.") (emphasis added). Thus, none of Mills's allegations contradict Stoll's declaration that Mills's location in-state was "incidental" to his employment, or indicate that his activity shows any purposeful availment of Connecticut by the defendants. *See Jeffs v. World Monuments Fund, Inc.*, 2017 WL 4864981, at *4 (E.D. Pa. Oct. 26, 2017) (denying personal jurisdiction where "Plaintiff attended a handful of meetings on Defendant['s] behalf" within the forum state, but "nothing in the record indicate[d] that Plaintiff was required to solicit business in [the forum state] as a condition of his employment"); *Bertolini-Mier v. Upper Valley Neurology Neurosurgery, P.C.*, 2017 WL 4081901, at *5 (D. Vt. Sept. 13, 2017) (denying personal jurisdiction where, though agents performed work in the forum state, there was no evidence the defendant "directed [the agents] … to take action in[-state]"). *Cf. Lee*, 2023 WL 7497103, at *7 (finding no minimum contacts from in-state solicitation of business partially because "the record does not reflect that such solicitation resulted in any 'ongoing obligations'" within Connecticut). Plaintiff's efforts to leverage his "contacts" instead constitute "unilateral activity" that cannot be the basis of personal jurisdiction over the defendants. *Walden*, 571 U.S. at 285.

The cases Mills cites in support of finding minimum contacts do not change the Court's analysis. Mills cites *Tatoian v. Junge* for the proposition that Defendants' recruitment of him constitutes the solicitation of in-state business, but that case does not deal with an employment

15

relationship. 2013 WL 6195486 (D. Conn. Nov. 26, 2013). Instead, the plaintiff in *Tatoian* was solicited regarding an investment opportunity. 2013 WL 6195486 at *1. Contrary to Mills's assertion, the court in that case found that the exercise of specific jurisdiction was improper because the defendant had not solicited the plaintiff's investment himself, but merely received the plaintiff's money thereafter. *Id.* at *6. By contrast, in *Needle v. True N. Equity, LLC*, this Court found minimum contacts in a remote-work relationship where the CEO of the defendant company explicitly hired the plaintiff to "raise investment capital from [his] network in Connecticut," successfully raised 23% of their capital from Connecticut residents as a result of the plaintiff's efforts, and advertised to investors that it had a Greenwich, Connecticut office, which was the plaintiff's home office. 2020 WL 1550219, at *5–6 (D. Conn. Apr. 1, 2020).

Here, the record indicates no direction from Defendants for Mills to engage in in-state activity, and no participation on their behalf beyond one meeting with a potential healthcare provider that Stoll attended remotely, which did not lead to any deal between that company and Profit Drivers. ECF No. 27-1, Mills Decl. ¶ 13. Instead, the only purposeful acts by Defendants within the State of Connecticut were through the employment of a single remote worker, Mills. Such an action creates a link between the employer and the employee but not between the defendant and the forum. *See Schlechtweg*, 2022 WL 541507, at *10; *Callahan*, 2020 WL 2061882, at *11–12. "[The] defendant's relationship with a plaintiff … alone[] is an insufficient basis for jurisdiction." *Walden*, 571 U.S. at 286.

I therefore find that there are not minimum contacts between the defendants and Connecticut sufficient for the Court's exercise of personal jurisdiction over them to comport with due process. Because I conclude that minimum contacts are lacking, I do not analyze whether exercising personal jurisdiction over Defendants would be "reasonable" under the Fourteenth

Amendment. *See Callahan*, 2020 WL 2061882, at *12 (declining to analyze personal jurisdiction under due process reasonableness requirement because minimum contacts were not found).

For these reasons, I GRANT the Defendants' motion to dismiss all counts for lack of personal jurisdiction against all defendants.[4]

**IV. Conclusion**

For the foregoing reasons, Defendants' 12(b)(2) motion to dismiss for lack of personal jurisdiction is GRANTED and the case is transferred to the Middle District of Tennessee. *See* 28 U.S.C. § 1406(a); *Spar, Inc. v. Information Resources, Inc.*, 956 F.2d 392, 394 (2d Cir. 1992) (transfers permitted under Section 1406(a) when in the interest of justice, even when venue is proper, where "the transfer has enabled the parties to surmount an obstacle, such as lack of jurisdiction, which would have precluded suit in the transferor district."); *Chen v. Wang*, 793 F. Supp. 3d 447, 452 (E.D.N.Y. 2025) ("It is well-established that courts have authority to transfer civil actions *sua sponte* under both § 1406(a) and § 1404(a).").

IT IS SO ORDERED.

/s/
Michael P. Shea, U.S.D.J.

Dated: Hartford, Connecticut
       January 5, 2026

---

[4] Because the Court has granted Defendants' Rule 12(b)(2) motion, there is no reason to reach Defendants' challenge to venue.